THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* LEÓNICO MONROIG, Defendant and Appellant.

No. 8504. Argued February 17, 1941.—Decided February 24, 1941.

*A. Reyes Delgado* and *P. Santos Borges,* for appellant; *George A. Malcolm, Attorney General; R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

Leónico Monroig was convicted of the crime of carrying prohibited weapons and sentenced to two months in jail. As the only basis for this appeal he alleges that the judgment is not upheld by the evidence. The defendant offered no evidence whatsoever and that of The People consisted in the testimony of Antonia Monroig, the daughter of the accused, and the wife of the principal witness Genaro López, and in the testimony of Daniel and Antonio Ramos and Genaro López. The testimony of the first two witnesses gives no help whatsoever, as according to them they were not in the place of the happenings when these occurred. Antonio Ramos only knows that the shots to which we will refer further on were made from the house of Genaro López and he knows that Leónico Monroig made them because López told him so. So that the decision of this case depends principally on the testimony of Genaro López. The latter testified that little more than a year before the date of the happenings, he had seduced a daughter of Monroig and that since then they were not on speaking terms; that on the day of the happenings, between 7:30 and 8 o'clock at night, Monroig went to López' house and on reaching the door told him: "López, I have to talk to you" and that the latter answered: "Come up"; that at that very moment a shot was fired at him from the door and immediately following he heard four more shots, as a result of which López received a wound in his chest; that he then ran into the house and taking up a

knife that he had on a shelf he went down and struggled with Monroig, wounding him. When he was asked who fired the shots López stated that he believed it was Monroig but then said that he had doubts because according to him there were some neighbors in front of his house at that time and as it was dark he could not see who attacked him; that he fought with Monroig because he considered him his only possible enemy. From the testimony of López as well as from that of the other witnesses, a clear purpose can be seen on the part of all of them to exhonerate Monroig by creating a doubt as to the person who carried the weapon when the shots were made. Therefore, we should analyze the testimony of López in the light of the attendant circumstances, in order to determine whether, notwithstanding his purpose of defending Monroig, the guilt of the accused has been proven beyond a reasonable doubt. There is no controversy whatsoever as to the fact that Monroig was the person who came to López' house; that López, as we have seen, considered him "the only enemy that he could have" and this belief as we have seen was not devoid of reasons. So that there existed a motive for the attack upon López by Monroig. Nevertheless, López, even though the shots were made at the door of his house at the moment in which he and Monroig were speaking, can not assure that the former was the aggressor, simply because it was dark. Now then, taking into consideration the animosity existing between them, it is logical to suppose that when Monroig came to López' house after a year had passed during which he had not talked to him, and spoke to him in the manner in which he did, López did not expect a friendly conference and he must have placed very close attention upon the movements of Monroig. This being so, and as the shots were fired so close to and in front of him, since he received the wound in the breast, he must necessarily have seen the flashes and seeing them must have known whether

or not it was Monroig who fired the shots. In the case of *People* v. *Delerme,* 51 P.R.R. 503, this Court said: .

" . . . Alvarado testified that the defendant fired a shot from a pistol but then said that witness did not see him fire the shot. If one is in the neighborhood of a person there can be a realization from the sound that a shot is being fired and by that particular person. Also as the fiscal suggests the witness might have been trying to protect a friend. Appellant does not deny that shots were being fired but insists that no one could know who fired them. The physical situation and the circumstantial evidence tended to show that Alvarado and the appellant were on the scene where the shots were fired. Then the court might conclude that it was not Alvarado who fired the shot and by exclusion that the defendant did so."

That López saw him and that he knows it was Monroig who attacked him is shown by his conduct in warding off the attack with a knife and in fighting with Monroig for 15 or 20 minutes as well as by the statement a short while later to the witness Antonio Ramos that it was Monroig who wounded him. On the other hand, the darkness which existed at that moment was probably not so intense when, notwithstanding the hurry and the nervousness of the moment, López could immediately find the knife he was looking for. The other people who were near the house, were, according to López, his neighbors, and he reveals nothing which tends to show an interest on the part of any of them to harm him, all of which dissipates any doubt which might have arisen in respect to them. .

As it was not López who wounded himself with a bullet, it must necessarily have been the appellant, his father-in-law, and in order to wound him he must necessarily have carried a weapon.

The circumstance that the witnesses for the prosecution showed an intention to exonerate the accused of liability, does not relieve a court of its duty to sentence. him if from the evidence and the attendant circumstances his guilt is shown beyond a reasonable doubt.

The fact that the lower court has acquitted the accused of a violation of the Act for the registry of fire arms of which he was also accused, is not sufficient reason to acquit him of this, since we do not know the reason that the Court had in rendering that judgment. We are not convinced either by the fact that López testified that while he was struggling at close quarters with Monroig after the shots, he did not see any revolver or pistol in the latter's hands, since apart from the evident purpose of exhonerating him from liability, the weapon was useless to Monroig after the bullets had been fired, for which reason there is nothing strange in the fact that he would probably have thrown it away or hidden it after he used it.

For the foregoing reasons the judgment appealed from must be affirmed.

Mr. Justice Todd, Jr., took no part in the decision of this case.